NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4345
_____

JOHN A. RILEY, JR.,
                                        Appellant

v.

ERIC K. SHINSEKI, Secretary,
Department of Veterans Affairs

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 07-cv-0233)
District Judge: Honorable Sean J. McLaughlin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 3, 2011

Before:  RENDELL, CHAGARES and ALDISERT, Circuit Judges

(Opinion filed: 1/5/2011)
_____

OPINION OF THE COURT
_____

PER CURIAM

        John Riley, Jr., appeals from an order of the District Court granting summary

judgment in favor of his former employer on Riley's retaliation claims.  We will affirm.

I.

From May 1993, until his termination on November 26, 2005, Riley was employed by the Veterans Affairs Medical Center in Erie, Pennsylvania (the Erie VAMC).[1] He began working for the Erie VAMC as a Computer Specialist, was promoted several times, and eventually became its IT Specialist. As such, Riley was tasked with managing the Erie VAMC's local area network. He was also responsible for, among other things, maintaining the hardware and software for its computer systems.

At some point between 1999 and 2001 (Counts I), and later in November 2004 (Counts II), Riley provided testimony in support of separate Equal Employment Opportunity Commission (EEOC) proceedings initiated by two of his co-workers, Joyce Counts and Ila Tordoff, against the Erie VAMC. The complaint in Counts I, filed by both Counts and Tordoff, was predicated on claims of sexual harassment and disparate pay, and it assigned culpability to Erie VAMC employees David Lucas, Michael DiMarzo, and Joseph Delanko. In Counts II, Counts alone filed a complaint with the EEOC against John Duemmel and Brian Wilshire, claiming retaliation for her initiation of Counts I.

From August 2004, Wilshire was Riley's first-line supervisor. During that time, Riley was assigned a project that included the implementation of a video-teleconferencing (V-Tel) system at community-based outpatient clinics (CBOCs) run by the VA in two

---

1 We consider the facts in the light most favorable to Riley. See Colwell v. Rite Aid Corp., 602 F.3d 495, 498 n.2 (3d Cir. 2010).

northwestern-Pennsylvania counties – Warren and Crawford. Essentially, the V-Tel systems would enable patients at the clinics to communicate via live video feed with medical professionals at the Erie VAMC. In July 2004, Riley sent an email to Duemmel and several others, stating that he did not have the expertise necessary to guarantee success in implementing the V-Tel systems. In addition, Riley made verbal requests to Wilshire for assistance with the V-Tel systems project, to no avail.

In March 2005, a series of email communications between Erie VAMC technical and administrative staff identified multiple problems related to the implementation and operability of the CBOC V-Tel systems. For example, Tracy Knox, the clinical services supervisor at the Erie VAMC, stated that at the Warren CBOC "[a]ll computers are not fully functional," and that "V-Tel is not working." The emails also expressed concern that deadlines for project completion were not going to be met.

In April 2005, Duemmel, Riley's second line supervisor at the time, sent an email to Knox and others stating that, following a meeting with Wilshire, an "action plan for the CBOC's" had been made; Riley was to be "removed from all CBOC IT operations." In addition, Duemmel notified Riley by letter that a three-day suspension was being proposed as a consequence of Riley's failure to meet the deadlines for installation of the V-Tel systems, and that Riley's prior disciplinary action[2] and an alleged verbal counseling

---

2 In January 2003, Riley was admonished for failing to make payments on his government-issued credit card. In April 2003, when Riley was still delinquent with his payments, he received a formal letter of reprimand from his first-line supervisor at the

from Wilshire in February 2005, would also be taken into account. After reviewing Riley's response to the proposed suspension, and "tak[ing] into consideration [Riley's] past disciplinary record," Dr. Michael Adelman sustained the proposed suspension based on the allegations in Duemmel's letter.

Separate and apart from the problems with the V-Tel project, on May 24, 2005, the computer system server at the Erie VAMC crashed. As a result, users of the system could not connect to the server and were unable to access U:/ drive files and other important documents, and there was substantial data loss. Apparently, the system had not been properly "backed up" (i.e., there was no mechanism in place that would allow the system to immediately recover from the system failure).[3] In Riley's own words, the practical effect of the crash was "devastating," and it took three days for the server to resume running at full capacity.

On June 2, 2005, before his suspension was to go into effect, Riley contacted an EEO counselor. The next day, Riley informed Valarie Delanko, who had succeeded Duemmel as Riley's second-line supervisor,[4] about his prospective EEO complaint. The

time, Dennis Horton. The letter was to remain on file for three years maximum, barring future discipline during that time, but it could have been removed for good behavior after two years. After consultation, Duemmel and Wilshire declined to exercise their discretion to remove the letter of reprimand after two years.

[3] The available mechanism would have been the "VERITAS Backup Exec" software program, but it had not been run since early March 2005.

[4] Notably, Valarie Delanko is married to Joseph Delanko. The two were not married at the time Riley testified against Joseph Delanko in <u>Counts I</u>.

4

complaint was eventually filed on July 11, 2005. In the EEO complaint, Riley generally alleged as follows: "As I was the primary witness for a coworker in one prior and one current EEOC complaint . . . I am being reprised against, methodically and progressively, by staff members, both within and [outside of] this office . . .." Riley was ultimately unsuccessful with his EEO complaint.

Pursuant to Dr. Adelman's decision, Riley was suspended from work, without pay, between July 18, 2005 and July 20, 2005. Two days later, on July 22, 2005, Riley received a letter of proposed termination from Valarie Delanko, who had personally recommended that form of discipline. The letter explained that the proposed removal was predicated on four "charges" related to the March 24, 2005 server crash: (1) Loss of Government Property through Carelessness or Negligence; (2) Careless or Negligent Workmanship Resulting in a Delay of Operations; (3) Failure to Follow Instructions; and (4) Failure to Follow Procedure. Riley submitted oral and written responses to the proposed removal. A single-member Administrative Investigation Board (AIB) was convened by Dr. Adelman to investigate Riley's culpability concerning the server crash.

The AIB was chaired by Chris Helsel, a supervisory IT specialist from the Veterans Affairs Medical Center in Altoona, Pennsylvania. After completing his investigation, Helsel issued a memorandum on October 7, 2005, which included findings of fact, conclusions based on those findings, and recommendations for disciplinary action against both Wilshire and Riley. In particular, Helsel concluded that Riley, "upon finding

5

issues in the back-up routine, had the ability to fix the problem but failed to take action to insure protection of the data." Helsel's recommendations were adopted by David Wood, acting director at the Erie VAMC. Valarie Delanko's termination proposal was approved on November 21, 2005. Riley's employment was officially terminated five days later.

In August 2007, Riley filed the complaint at issue in this appeal. Riley alleged that his suspension and termination from employment at the Erie VAMC were effected in retaliation for his testimony in Counts I and Counts II, as well as in retaliation for filing his own EEO complaint, all in violation of 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [an employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceedings, or hearing under this subchapter."). In January 2009, the Government filed a motion for summary judgment. Riley filed an opposition, and oral argument was heard by the District Court. The Government's motion was granted on September 10, 2009, and Riley timely appealed.

## II.

This District Court had subject matter jurisdiction under 42 U.S.C. § 2000e and 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291, and our review is plenary. EEOC v. The GEO Group, Inc., 616 F.3d 265, 270 (3d Cir. 2010). We apply the same test as the District Court. Brown v. J. Kaz, Inc., 581 F.3d 175, 179 (3d Cir. 2009). "Summary judgment 'should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" GEO Group, 616 F.3d at 270 (quoting Fed. R. Civ. P. 56(c)). "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law." Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771 (3d Cir. 2009) (citation omitted).

III.

In analyzing Riley's retaliation claims, the District Court applied the three-step, burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). Under McDonnell Douglas, the plaintiff bears the initial burden of demonstrating a prima facie case of retaliation, see id. at 802, by showing that (1) he engaged in protected conduct; (2) his employer took adverse action; and (3) there is a causal link between the protected conduct and the adverse action. See Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002). If a prima facie case is made, the burden then shifts to the employer to articulate a legitimate, non-retaliatory explanation for the challenged employment action. See McDonnell Douglas, 411 U.S. at 802. If the employer satisfies that "relatively light burden," Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994), the plaintiff is then required to show that the articulated explanation is a mere pretext for retaliation. See McDonnell Douglas, 411 U.S. at 804. "To survive a motion for summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably reach [that]

7

conclusion[]." Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006).

The District Court identified three instances of Riley's engaging in protected activity: Riley's testimony in Counts I, Riley's testimony in Counts II, and Riley's EEO complaint. The District Court also indentified two relevant adverse employment actions: Riley's suspension and subsequent termination. With respect to Riley's suspension, the District Court held that "[t]he temporal proximity between the Plaintiff's protected activity and subsequent suspension is so patently remote that no inference of causation can be properly drawn," given that "Plaintiff's testimony in Counts I and Counts II predated his letter of suspension by at least four [years] and six months respectively." The District Court alternatively held that, "[e]ven if a prima facie case has been made out, summary judgment would nevertheless be appropriate based on the Plaintiff's failure to raise a triable issue of fact . . . as to pretext." Specifically, the District Court found immaterial Riley's contentions "that Wilshire 'concocted' evidence of a counseling session in February 2005," and that the suspension was unjust in light of Riley's workload and family problems.

With respect to Riley's termination, the District Court "assume[d], arguendo, that a prima facie case of retaliation has been made out." The District Court concluded, however, that "a careful review of the record reveals that the Plaintiff simply disagrees that the Defendant's decision to terminate him was correct." The District Court rejected the notions that "Wood merely 'rubber-stamped' Helsel's Findings and

8

Recommendations," or that there existed evidence of Wood's retaliatory animus. The District Court also rejected Riley's contention that he and Wilshire received disparate treatment.

IV.

On appeal, Riley has focused his arguments on the following two issues: (1) whether Riley has made out a prima facie case of retaliation for engaging in protected EEO activity; and (2) whether the District Court erred in concluding that the Government's non-retaliatory explanation for Riley's termination was not pretextual. The District Court assumed, arguendo, that Riley had made out a prima facie case of retaliation with respect to his EEO complaint and subsequent termination. We will do the same and proceed to address Riley's second issue, which we find to be determinative.

The District Court essentially concluded that, accepted as true, Riley's partial responsibility for the March 24, 2005 sever crash, coupled with his disciplinary record, was a non-retaliatory explanation for his termination sufficient to carry the Government's burden at McDonnell Douglas step two. We agree. See Fuentes, 32 F.3d at 763 ("The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving [retaliation] always rests with the plaintiff.") (emphasis in original). The necessary follow-up question, then, is whether Riley has "point[ed] to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated

legitimate reasons; or (2) believe that an invidious [retaliatory] reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 764.

While "we may not require affirmative evidence of [retaliation] in addition to proof of pretext, it does not change our standard for proving pretext which 'places a difficult burden on the plaintiff.'" Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005) (citation omitted). Only one of Riley's proffered avenues for demonstrating pretext, via Fuentes prong two, merits serious consideration: Valarie Delanko's involvement in Riley's termination proceedings.[5]

Riley produced evidence that he testified against Joseph Delanko in Counts I, and that the Delankos married shortly thereafter. The record evidence also indicates that: Valarie Delanko became Riley's second-line supervisor in May 2005; on June 3, 2005, she learned that Riley was planning to file an EEO complaint related to his suspension; she immediately relayed to Dr. Adelman information concerning Riley's complaint; and it was Valarie Delanko who proposed Riley's termination. Based on those facts, Riley contends as follows: "[i]f a jury were to find that Mrs. Delanko knew of Riley's part in

---

5 As for Fuentes prong one, Riley has not cast "substantial doubt on a fair number" of the "bagful of legitimate reasons" proffered by the Government. 32 F.3d at 764 n.7. In particular, we note that it was purely discretionary whether the letter of reprimand for the credit card discipline would stay in Riley's file for three years instead of two, regardless of whether Riley had maintained a good performance record after the discipline was imposed. Moreover, we are not persuaded that Riley's suspension for deficient performance concerning implementation of the V-Tel system was insupportable, even accepting as true that the February 2005 verbal counseling from Wilshire did not actually occur.

the demise of her then soon-to-be husband . . . a jury could reasonable infer that she harbored a discriminatory animus toward Mr. Riley." (Appellant's Amended Br. at 17.) We agree.[6]

However, while Valerie Delanko's motivation for proposing Riley's termination is germane to the pretext inquiry, it is not determinative because she was not the ultimate decisionmaker. Nor did Valarie Delanko have any significant role concerning Helsel's independent AIB investigation and recommendations. Critically, Riley has not identified facts that could support a finding of retaliatory animus on the part of either Helsel or Wood. The Government is persuasive on this point:

> Riley admitted that Wood 'didn't know who I was from Adam' before coming to the VAMC in September 2005, and there is no evidence that Wood harbored any animus toward Riley thereafter. Wood familiarized himself with the causes and aftermath of the May 2005 LAN crash by reading the AIB report, which was drafted by an independent expert who Riley admitted had no bias against him. Yet Wood did not stop there: he also reviewed other documentary evidence and considered Riley's oral and written responses before deciding to terminate him. Ultimately[,] Wood accepted Helsel's recommendations in the AIB report because they 'seemed to line up and read true with my own previous experiences as Chief Information Officer' and were corroborated by other evidence.

(Appellee's Br. at 31.)

Throughout these proceedings, Riley has asserted that the Erie VAMC's decision

---

6 The Government argues that Valarie Delanko testified to having no knowledge of Riley's role in Counts I until June 3, 2005. That is not an obstacle for Riley at this stage, since we are reviewing the grant of summary judgment; we do not engage in credibility determinations, and conflicting evidence is resolved in favor of Riley as the nonmovant. See Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 267 (3d Cir. 2010).

to terminate his employment was incorrect (and we do not hold out the possibility that this is a case where the 'crime' did not fit the 'punishment'). Even the Government concedes that a reasonable jury could find, based on the evidence presented by Riley, "that the VA fired the wrong man." (Appellee's Br. at 45.) But that is not enough. See Watson v. SEPTA, 207 F.3d 207, 222 (3d Cir. 2000) ("[I]f an employer sincerely believes that an employee has stolen company funds and discharges the employee for this reason, the employer should not be held liable under the statutes in question just because it turns out that the employee did not steal the funds and that the employer's reason for the discharge was in this sense not 'true.'"). For Riley to withstand summary judgment there must be, and there is not, a genuine issue of material fact as to whether there was a retaliatory motive underlying either Helsel's recommendations or Wood's subsequent decision to terminate Riley's employment.

## V.

Accordingly, for the reasons given in this opinion, we will affirm the order of the District Court.